## HATCHER v. SMITH, trustee.

1. Where a testator devised to a named son described land, "for the use of my said son, his wife and children, during his natural life, and after his death to be equally divided between any children he may leave," further providing, "it is my intention that said land shall at no time be subject to the debts of my said son," . . but shall be for the support of himself and family during his natural life, and after his death to be divided as before stated"; and where such testator bequeathed to the same son an interest in certain railroad-stock, providing, as to it, "the portion or share of my son . . shall be for the support of my said son and his family during the term of the natural life of my said son, and after his death to be equally divided between any children he may leave": *Held*, that even if, under a proper construction of this devise and bequest, any legal life-estate in the corpus of the property passed to the son, it was, at a time when he had a living child or children with a possibility of becoming the father of other children, too indefinite and uncertain to become the subject of levy and sale, and this would be so as long as such possibility continued.

2. This case is distinguishable from that of *Bozeman* v. *Bishop & Pritchard*, 94 *Ga.* 459.

Submitted January 22, — Decided July 28, 1898.

Levy and claim.    Before Judge Callaway.    Columbia superior court.    March term, 1897.

An execution in favor of J. F. Hatcher against John L. Smith was levied upon "the life-interest of John L. Smith in 300 acres of land in Columbia county, Georgia, and 45 shares of the capital stock of the Georgia Railroad & Banking Company, passing under the will of John Smith, as tenant in common with Bessie H. Smith, wife of John L. Smith, and

Alma J. Water and Eleanor Smith, children of John L. Smith."
John L. Smith interposed a claim, as trustee for his wife, Bessie
H. Smith, and his two children, Alma H. Water and Eleanor
Smith.    Upon the trial of the case the court directed a verdict
for claimant, and overruled a motion for a new trial.

The plaintiff introduced the judgment, execution, and entry
of levy, and showed that the defendant in execution was, at the
date of the levy, in possession of the property levied on. Claim-
ant testified that the property levied on passed to him under
the will of his father, John Smith, as trustee for the persons in
whose behalf the claim was interposed.    His daughter Alma
H. Water has attained her majority, and his daughter Eleanor
Smith is sixteen years old.    He is in possession of the property,
and receives the income from it in behalf of himself and his
children.    The 45 shares of railroad-stock stand, on the books
of the Georgia Railroad & Banking Company, in his name as
trustee for his wife and children.    He considers himself trustee
under the will.    He has never been appointed trustee by any
court, and makes no returns annually as trustee.    He draws the
dividends on the stock.    His mother, A. E. Smith, mentioned in
the will, is dead.    The will of John Smith contained the fol-
lowing provisions: "Item 3.  I give and bequeath to my son,
John L. Smith, all that portion of the lands belonging to me,
on the right-hand side of the Columbia road (as you go from
my residence to Appling) on the west side of Little Kiokee
creek, for the use of my said son, his wife and children, during
his natural life, and after his death to be equally divided be-
tween any children he may leave, with this reservation, that
during the life of my beloved wife she shall have the privilege
of getting pine wood off of said land.    I want it understood
that it is my intention that said land shall at no time be sub-
ject to the debts of my said son, John L. Smith, but shall be
for the support of himself and family during his natural life,
and after his death to be divided as before stated in this item.
Item 4.  The rest and residue of my estate, both real and per-
sonal, I give to my beloved wife, E. A. Smith, during her nat-
ural life, subject, however, to the following charges, that is to
say: the net income arising from my lands not heretofore be-

queathed, annually to be divided between my said wife E. A. Smith, and my son Jeremiah T. Smith, and my daughter Mary T. Smith. And the balance (after paying the expenses of the farm on which my said wife resides with me at this time, should said farm fail to be self-supporting) of the net income arising from my bank, railroad, or other stocks, choses in action, bonds or notes of every description or character, to be equally divided between my aforesaid wife and my children, John L. Smith, Lucy A. Paschal, William J. Smith, Jeremiah T. Smith and Mary T. Smith, share and share alike. And after the death of my said wife, it is my will and desire that all my personal property shall be equally divided between my children, share and share alike. . . The portion or share of my son John L. Smith shall be for the support of my said son and his family during the term of the natural life of my said son, and after his death to be equally divided between any children he may leave. . . Item 5. Should either of my children die without leaving wife, husband or children, then it is my will and desire that his or her share of my estate revert back and be equally divided between my other surviving children or representatives, share and share alike."

*Henry C. Roney* and *Emory Cason*, for plaintiff.
*Thomas E. Watson* and *John T. West*, contra.

FISH, J. 1. The first headnote sets forth the material parts of the will under which John L. Smith, as trustee, claimed the property levied upon. We deem it unnecessary to express our opinion as to whether or not, under the terms of the will, there was a subsisting executory trust when the claim was interposed, and whether John L. Smith had a life-interest only in the usufruct or in the corpus of the estate. For, granting that the trust, if any, was executed, and that, under a proper construction of the will, he had a legal life-estate in the corpus of the land and railroad-stock in question, it was certainly too vague and uncertain to become the subject of levy and sale, because at the date of the levy and when the claim was interposed and tried he had two children then in life, with a possibility of becoming the father of more, and so long as such a possibility

continued his interest would be too shifting and indefinite to be subject to levy and sale. Until his death it could not be known how many children he would have and how many, if any, would be in life at that time. Should the one-fourth interest of the life-estate be sold under this execution against him, and should other children be born to him, they would be deprived of any interest in the one-fourth sold, or be driven to the expense of having to bring suit for same, with risk of loss of income, etc.

2. The case at bar is distinguishable from that of *Bozeman* v. *Bishop & Pritchard*, 94 *Ga.* 459. In that case the property was conveyed to a father by name and to his lawful children, without naming them, their heirs, etc., for the use, support, and maintenance of the father, and for the support and education of his children during the life of the father, and at his death to be equally divided amongst his lawful children. The father at the time the conveyance was executed had two children then in life. It was held that the father and each of the children took, under such conveyance, an estate for the life of the father, with remainder to the children, and that the father's life-estate in the property was subject to levy and sale for his debts. There was an estate to the father and his two *children then living*, for and during his life, with remainder to those two children. In the case at bar the property is given for the use of the father, his wife and his *children*, for and during his natural life, and after his death to be equally divided between *any children he may have*, it being for the support of himself and *family*. The father's interest was contingent upon, and subject to be diminished by, after-born children, whose rights would be the same as those in life when the levy was made. There was no such contingency in the case in the 94 *Ga.*, supra. There the father's interest was more definite, and could be sold without interfering with the rights of his children then living or to be born, as the latter would have no interest in the property.

*Judgment affirmed. All the Justices concurring.*